Good morning. Good morning. Good morning, Your Honors and Counsel. John R. Ceci, Assistant Federal Public Defender, appearing on behalf of the appellant, Diana Mekaeil. Now, Your Honors, Ms. Mekaeil has obviously raised very similar claims to that as co-defendant amador, and I don't want to rehash everything that was just said. What I do want to do is make a few points about the defendant's primary claim with respect to the independent source doctrine, that is, that the district court erred by failing to apply the two-pronged test for that doctrine as set forth. Now, are you claiming the independent source doctrine? Are you arguing that? Absolutely. That's our primary claim. But you argue that the government waived the independent source rule. Is that right? Absolutely, they've waived it, but you don't actually have to reach that. Then why didn't you waive it? Why were you placing you on the independent source rule? Because once the district court found that the warrantless search of Room 150 was unconstitutional, it was at all times thereafter the government's burden to establish and prove up an exception to the exclusionary rule. They did not do that here. It was their burden, and they're the ones that ultimately waived it. There is—this is not a large universe of possible exceptions to application of the exclusionary rule, right? We have inevitable discovery, independent source doctrine, good faith, attenuation. Given the circumstances, there might be a few others. The government should be well aware of its burden. What it did here was actually propose not only the wrong test, but a test that eliminated an element of what they needed to show and one that they could not prove, as we know based on this record. It is 100 percent their responsibility to prove up an application of the exclusionary rule, and what they're proposing here in this court is to flip that burden to the defendant, to disprove. That's completely contrary to this court's articulation in the Forbes case cited in our briefs that says it is the government's burden to prove an exception to the exclusionary rule, and that case is explicitly about the independent source doctrine. So it is absolutely— I think the district court would be surprised if we reversed this case and said, I'm sorry, Your Honor, you have misapplied Murray and the independent source rule. And the district court would say, wow, nobody told me about that when the case was presented. To the extent that Judge Tolkien would be surprised, it would be on the government. I say that because we get back to the basis of how we function. We have to have the district court taking the first look at arguments, and more specifically and more helpful for us having the opportunity to take evidence that would either support or negate those positions. And here we're just flying off into the nethers. I don't think we are, and here's why. I don't dispute the fact that the district court is a general principle, of course, but A, Murray's well-established Supreme Court precedent, of which the government should have been aware. Two, the record actually is fully developed on this point. There's no more evidence that the government could put on that would change the outcome. The evidence is dispositive that Murray's first prong cannot be met on this record, and there's at least five reasons that I count why that's the case. So, the first is that we know that the search was motivated by what they saw in their unlawful entry, because it was the centerpiece of the warrant. It's the first paragraph of the warrant, and it told the magistrate what they would find in that hotel room if he issued that warrant. Second, the warrant itself is framed by their observations. The maid said that she saw what she thought was crack or crack pipes, but by the time the warrant affidavit comes around, the officers are talking about methamphetamine, the unlawful possession of methamphetamine being the crime that's listed in the warrant. That's from their trained observations during their unlawful entry. Third, the agents were remarkably candid to their credit in their testimony below, and they affirmatively admitted that they entered that room to, quote, confirm what the maid had told them and to check out, essentially, her tip. That is, that they entered the room to search for evidence without a warrant. That is just blatantly unconstitutional. And to their credit, they admitted that. Fourth, they also admitted that they did not discuss getting a warrant prior to entering the room. And fifth, we know when the decision to make a warrant was made. It was made after their lieutenant, their supervisor, came to the scene, himself unlawfully entered the room without a warrant, and then exited and said, I need to get a warrant. He then, for example, declared the warrant and returned to execute it. I mean, it just – there's nothing the government can put on that contradicts that. Their officers can't contradict their testimony. When we look at the affidavit, do we see only that the information the agents saw when they entered the room is the basis for the affidavit in support and seeking a warrant? I think it's the centerpiece of the warrant. There is absolutely additional information in there from the subsequent investigation. Can we look at this and say, was there probable cause based – sort of getting back to what the district court did – to say, well, okay, we'll exclude the illegal entry by the officers, but we will consider what Black saw when she entered the room. They know that. The officers know that. Wouldn't that, in and of itself, be enough to seek a warrant here, to search the room? Absolutely not, for two reasons. The first is that that's not the question under Murray. The inquiry under Murray is not what the officers could have done, but what they did do and what they would have done. So, A, fails Murray. B, the tip in and of itself, for the reasons that Mr. Amador very thoroughly articulated in his briefing, wasn't reliable enough and the investigation – the very cursory, less than three-minute investigation the officers did, was in itself not sufficient to establish probable cause. Are you measuring Black against the measure that we would apply to a confidential informant? No. When we're talking reliability? No. And, you know, Gates is – Don't we usually believe witnesses when they go to law enforcement and say, hey, I just saw this? Sure. And this is where I work, and everybody knew. I mean, it wasn't some person who broke into the room and tries to set somebody up. I mean, there isn't anything like that going on here. Yeah. This is – you know, I mean, obviously, with respect, Gates – you know, the Supreme Court said in Gates that rigorous scrutiny is not applied, but I don't think that means that some scrutiny is not applied. They conducted, admittedly, again, to their credit – were very honest about – they didn't do much of an investigation. They didn't give the maid her full attention. They didn't do any follow-up about who had entered the room to that person. They have a criminal history. Again, it was less than three minutes of entire investigation. The maid wasn't even on site when the officers arrived. She had to be called down. So we're talking about an incredibly cursory assessment of her reliability and honesty. But even putting that aside, you don't even have to get to that because Murray – because, again, Murray controls them. That is not the – the inquiry is not what they could have done, but what they did do here. Well, I'm sorry. Can you just address that point a little bit more? Is there any reason to question the credibility of the black here? Other than you're saying it was cursory, but help me understand why her credibility – what would be at issue? Well, I think there's two things. You know, Mr. Amador, we joined his briefing on this matter, and I point you to that. I think it thoroughly recounts those issues. But the two main issues are there was no basis to know if what she – that she had any personal basis for knowing that what she saw was, in fact, narcotics. She had no training and no personal experience with drugs. And second, her statements were not consistent. She – they were evolving as she talked to her supervisor, to the first officer, and then to the second officer. And so I think there's enough red flags there that they should have done more. And, you know, again, there's – they don't have to do much, but they didn't do hardly anything here. And I don't think that that cursory investigation, coupled with those sort of red flags, amounts to what we can say is a full assessment of her honesty, reliability, and credibility that would allow them to essentially rely on that to get a warrant in and of itself. But again, I don't think you even need to reach that because Murray doesn't ask that question. You know, again, with respect, I'll just briefly address good faith. And it's really a simple analysis, is that good faith exception doesn't apply when the officers rely on their own prior conduct. This Court said as much in Bagley, it said in Mr. Amador's 20HA letter, it said as much in the Nelson case of last year, cited in the briefs. The government may not like those holdings, but it is – this court is, of course, bound by prior precedent. And so if the government disagrees with the outcome in those cases, it could have and could seek en banc review. And more importantly, here, the district court affirmatively found that Lieutenant O'Brien was the one who executed – who prepared the affidavit to obtain the warrant and then returned to the scene to execute it. Government hasn't disputed that factual finding, and so we know that the same officer was involved. He had every reason to know that the initial search was unconstitutional and it can't be said to rely on good faith of a warrant that he himself obtained and executed. So – and even if you did get to the government, it fails on its own terms because the violations here are just – are just so blatantly inconsistent with clear constitutional commands. It's been black letter law for half a century that you can't enter a hotel room without a warrant to search for evidence. And that's what – exactly what happened here, and I think that that is why this case is the perfect case for application of the exclusionary rule. And with that, I'll yield the balance of my time for rebuttal, or reserve the balance of my time for rebuttal. Thank you. Thank you. James Brown for the United States. Your Honors, I may repeat myself from the last argument. If I do, I apologize in advance, but I think it's probably inevitable. First of all, let me talk about his – my colleague's claim that the district court erred in not applying a Murray when he didn't raise it.  He raised it because he didn't raise it. Well, can you just – why is it your burden to raise it? You want to rely on the doctrine, so why shouldn't you have the burden of raising it? Here's why – three cases why – that we cite in our brief, Barajas, Chavez, Franco, and Chavez-Marquez. And those three cases stand for the proposition that a defendant has the burden to be specific in the first instance on his legal claims. And that's what puts the issue in play. Not just saying, independent source, or unlawful search. You have to be more specific. Look at the Chavez-Marquez case. But how about the point that you're the one who wants to rely on the doctrine, right? No, they want to rely on Murray. We're relying on Sims. Their whole argument was Sims before the district court. Independent source, Sims. Independent source, Sims. Now change theory. Independent source, Murray. Independent source, Murray. That's where we're at. Right, but you want – you're the one that wants to rely on independent source. Well, we do rely on independent source. We did below. And we're saying the district court did not err in saying that the warrant was an independent source for recovery of the items from the room. We're saying that, yes. Did you say that below? Because they're arguing that you have waived the independent source because you didn't raise it below. Sims equals independent source. That's what we argued below. We said we came within Sims. Sims equals independent source. So to the extent that we say that we complied with Sims, we argued independent source. That's our response to that. If we can go to Judge Ike's good question about, you know, who has the burden here? What do we have to show? The court has said a defendant who requests an evidentiary hearing on a motion to suppress, I'm quoting from Chavez-Marquez, bears the burden of showing that there are disputed issues of material fact. To warrant an evidentiary hearing, the motion to suppress must raise factual allegations that are sufficiently definite, specific, detailed, and non-conjectual to enable the court to conclude the contested issues of fact going to the validity of the search are an issue. So he – the defendant – that's how you put the ball in play. You raise a contested issue. You assert facts. You say, we dispute this fact. We dispute Murray Prong One. We dispute the – Well, they raise the fact that there was entry into the hotel room without a warrant. They're talking about illegal search, and they're trying to suppress fruits of that search. You, as the government, you're wanting that evidence in, everything they found, all related evidence. You want it all in. So isn't it your burden to say to the court at the suppression hearing, here is a reason or five reasons why this evidence is admissible? We did do that. And we answered their reasons for saying why it wasn't. That's all we're required to do. We did do that, Your Honor. We argued independent source. So we said it was admissible. So you cabin your responses to support the admission of evidence only to those points raised by the defendant. Well, that's how we have viewed the law. For example, in Franco, for example, where the defendants – where the court found that the defendant waived a claim that the officers lacked reasonable suspicion to stop based on an unreasonable mistake in interpreting a state residential parking statute, where the defendant's motion to suppress only discussed reasonable suspicion in conclusory terms and did not talk about the residential parking statute. They can't be conclusory. They can't be vague. What was the case you just cited? United States v. Franco. Franco? Thank you. That's 632 Fed APPX at 963. Is that in your brief? It is. Okay. And then Barajas-Chavez, 358 after 1263 at 1266 to 67. This court said the defendant was required to set forth plainly in his pretrial motions the grounds upon which he sought relief and finding defendant waived suppression claim that the roadblock was illegal or the defendant's written before the district court made only perfunctory references to the stop and search without mentioning any facts showing the roadblock was illegal. So you can't just say we challenge the stop. You have to give a specific reason. You can't just be vague. You can't be perfunctory. You have to be – he has the burden – the defendant has the burden of being specific. This court has said so in three different cases. That's how you put the ball in play. It's not independent source. And then we have to spit out Lefebvre's treatise on independent source. That's not how it works. Because this court has preservation rules. You can't change to a new theory on appeal and essentially argue a new case on appeal. Why would this be the case? This court has cited three public policy rationales in favor of the waiver rule. Counsel, can I just get you to clarify then? Yes. You say Sims. And that is enough to raise independent source. They argued Sims. We said it. We said they argued Sims. We responded. Okay. So it was not your – you're saying, but then they didn't come back and say, oh, you're citing the wrong case or – it was their turn to respond to that. They put the ball in play by saying Sims. We said we went under Sims. And then they kept arguing Sims. And they led the district court to think that Sims was the controlling law. So we weren't obligated to bring up something that they didn't even argue. We're not tasked with making arguments for them and then batting them down. Could I get you to then turn to the merits? On Murray? Yes. All right. And this, I think, would go to my colleague's statement in his argument, that the record is fully developed on Murray's first point, which is whether the agent's decision to seek the warrant was prompted by what they'd seen during the initial entry. The record is – first of all, if I could back up. I don't want to confuse the court or myself, for that matter. Murray has two prongs. The first prong is whether the officer's decision to seek the warrant was prompted by what they'd seen during the unlawful entry. The second prong is whether the judge's decision to issue the warrant was affected by the illegal entry. We argue in our brief that on the merits, on Murray, we fall squarely within Murray's second point, which is equivalent to Sims' analysis. On the first point, my colleague says that the record is fully developed on Murray's first point, that being whether the officer's decision to seek the warrant was prompted by what they'd seen during the initial entry. We don't think the record was fully developed. We got no notice that that was a factual dispute in play. And the district court had no idea that there was a factual dispute on that point. The defendant did not raise Murray. So consequently, the record, there's not really much there. So to be very frank with the court, if the court does get to Murray on Issue 1, we would probably not prevail because the record doesn't contain factual findings, which we were never put on notice that we had to produce. That's how this works. So if we're going to let the defendant just sandbag and make us bat down every argument that they don't make, there's no way this whole process can work. That's why this Court imposes upon defendants a burden to be specific in the first instance. There is a burden to be specific. Now, if I could move to the good faith argument that my colleague made. Again, my colleague cited the law that the good faith exception doesn't apply when officers rely on their own conduct. Again, that comes from this Court's cases in Herrera Zamora, Nichols, and Bagley. The standard used to be it ordinarily doesn't apply when the officers rely on their own conduct. And now under Bagley, the Court took out the word ordinarily. So now we're apparently stuck with the rule that the good faith exception does not apply unless the officers rely on the mistake of a third party. Our view is that that law is inconsistent with Supreme Court law as announced in Herring, as announced in Davis, which we discuss on pages 47 to 51 of McHale's brief. And we urge this Court to remand to the district court for discussion about whether Herrera and Bagley and Nelson remain good law after those cases and apply the and apply the edicts and the announcements and declarations in Davis and Herring to the facts of this case. Wouldn't we normally do that homework here? Well, we would, but there are factual findings that need to be made. Well, once you say, once we would say, if we are going down this trail, once we say we look at our cases and we look at Supreme Court cases and we divine from the two put together that probably Supreme Court cases control, I'm just guessing, and this is what they said, this is the rule, and now we'll remand for the district court to determine facts. Isn't that how it would usually go? The Court's the Court. The Court can do what it wants, obviously. You know, we're just setting Court suggestions. The Court obviously has better ideas and suggestions than we have. We're just trying to be helpful. Sometimes we are, sometimes we aren't. But our main point is that that the whole reliance on the mistake of a third party is simply inconsistent. It's absolutely inconsistent with Herring and Davis. The question is whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. The Herring Court said that is the question. And whether the officers relied on the mistake of the third party has nothing to do with that question. That's an irrelevancy at this point. It's also an irrelevancy when we look about, look at what the Supreme Court has said as far as the rationales for the exclusionary rule itself. The exclusionary rule, Herring said, serves to deter deliberate, reckless, or grossly negligent conduct. So that means if the officer's conduct does not fall within one of those categories, the exclusionary rule really shouldn't even apply. Again, the Davis Court said that no deterrence rationale exists when police act with an objectively reasonable good faith belief that their conduct is lawful, or that their conduct involves only simple negligence. None of those questions and none of those standards of culpability have anything to do with whether the officers relied on the mistake of a third party. They have nothing to do with that. The Court looks at the objectively ascertainable question, according to Herring, which is whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. And then we get to the money quoted in Herring, and here it is. Evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. That's Herring. And so whether the officers relied on the mistake of a third party really has nothing to do with whether the officers had knowledge or may be properly charged with knowledge that the search was unconstitutional. In other words, whether the officers relied on the mistake of a third party is not a metric of culpability. It is an irrelevancy at this point. And we ask the Court to carefully consider Herring and Davis as we discuss on pages 47 to 51 of the McHale brief. I think that I've said all that I need to say at this point. And unless the panel has any questions, I would yield the remainder of my time. Seeing none, thank you. Thank you, Your Honor. Just a few quick points. First, Sims is a traditional tainted warrant case, right? It derives from Franks. It's relevant to the second prong of Murray, and in fact is the identical inquiry. But it's not Murray, and it's not the independent source doctrine. So this was, in fact, as this Court recognized in Forbes, the classic case for independent source doctrine analysis in that there was an unlawful search that was then of that same location based in part on information obtained during that prior search. Textbook classic case. It was Ms. McHale had the burden to argue that the initial search was unconstitutional. Once she did that, and once she prevailed on that claim, the burden shifted entirely to the government to either accept suppression or to argue that an exception to the exclusionary rule applied. It failed to do so. It failed to make that argument or to induce the evidence. And accepting their position on appeal would flip the burden to criminal defendants to anticipate and argue everything that the government might come back with and essentially create a burden for the defendant to disprove the application of the exclusionary rule, which is not only inconsistent with Forbes, it's inconsistent with the entire adversarial process, I think. Again, it would be, based on those five facts that I mentioned before, it would have been clear error on this record for the District Court to find Murray's first prong satisfied. So I don't think that there is anything more the government could prove that would be helpful on that prong and so that reversal is the necessary remedy. To the extent that this Court was inclined, certainly a limited remand on the existing record for findings by Judge Milgren of Murray and the good faith doctrine could be appropriate. I'm speaking only for myself. I don't want to speak for co-counsel necessarily, but I think that that could be. But I think reversal is absolutely compelled based on the plain legal error and the clear record that demonstrates the government cannot introduce any evidence that would satisfy Murray's first prong. And finally, with respect to good faith, I think that Nelson and Bagley are clear, but even if you accept the government's arguments that post-Haring we conduct some sort of balancing test, it can't prevail even under that test because the conduct here was just reckless disregard for clear constitutional commands that is a textbook case of application of the exclusionary rule. And it's nowhere, it just doesn't fall anywhere near this line of validity that the government has invoked. And for those reasons, I would ask the Court to reverse Judge Milgren's suppression decision and remand the case for further proceedings. Thank you. Thank you, counsel. Thank you for your arguments this morning. The case is submitted.